1996 SD 70

**WEST TWO RIVERS RANCH, Appellant,**

**v.**

**PENNINGTON COUNTY, South Dakota, Appellee.**

**WEST TWO RIVERS RANCH, Appellant,**

**v.**

**MEADE COUNTY, South Dakota, Appellee.**

**Nos. 19142, 19230.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1995.

Decided June 12, 1996.

---

Bruce A. Hubbard, Hansen and Hubbard, Sturgis, for appellant.

Ronald D. Buskerud, Pennington County Deputy State's Atty., Rapid City, for appellee Pennington County.

Michael A. Jackley, Meade County State's Atty., Strugis, for appellee Meade County.

GILBERTSON, Justice.

[¶ 1] Taxpayer appeals the valuation for tax purposes of his ranch which lies across two counties. We consolidated the appeals which arose out of Pennington and Meade County circuit courts' affirmances of administrative law judges' decisions. We affirm the decision of the Meade County Circuit Court. We reverse and remand the Pennington County action to the circuit court of the Seventh Judicial Circuit.

## FACTS AND PROCEDURE

[¶ 2] West Two Rivers Ranch (Ranch) encompasses approximately 30,000 acres. Portions of the ranch are located in Meade and Pennington counties. The county boundary separating the Ranch is the Cheyenne River.[1]

[¶ 3] The portion of the Ranch within Meade County, 19,356.58 acres, was assessed in 1994 by Meade County Director of Equalization, Kirk Chaffee, as having a true and full value of $41.25 per acre. The Director used a formula utilizing cash rent values, soil surveys, and comparable sales to arrive at this valuation. The Director compared Ranch with six sales of property with similar soil ratings as Ranch's. These sales occurred in 1992 and 1993 and had an average selling price of $57.66 per acre.

[¶ 4] A portion of the Ranch within Pennington County, approximately 2,500 acres, was assessed in 1994 by David Potts, a certified appraiser from the Pennington County Director of Equalization Office, as having a true and full value of $85.00 per acre. The assessor used a similar method as was employed in Meade County, that is, a comparison of the subject property with soil surveys and comparable sales. County presented evidence of twenty sales occurring in 1992 and 1993, with an average selling price of $164.10 per acre, which were used as comparable sales in valuing the Ranch. Based on its finding that seven percent of the land, while tillable, could not be accessed with farm equipment, the administrative hearing officer reduced County's assessment to $83.00 per acre.

[¶ 5] Ranch appealed these valuations in each county to the county's board of equalization, the Office of Administrative Hearings, and the circuit court. The valuations were affirmed at each step of the appeals process, with the exception of the $2.00 per acre downward adjustment made by the administrative law judge sitting in Pennington County. The ALJ sitting in Meade County found, and Ranch conceded in its brief to the circuit court, that the extreme isolation and inaccessibility of the property were considered in the Meade County valuation.

## STANDARD OF REVIEW

[¶ 6] "Value is a question of fact and the trial court's determination will only be overturned if it is clearly erroneous." *Lincoln Twp. v. S.D. Bd. of Equalization,* 1996 SD 13, ¶ 24, 543 N.W.2d 256, 259. The construction of a statute and its application to particular facts present a question of law, reviewed de novo. *Johnson v. Rapid City*

1. The waters of the Cheyenne constitute more than a physical obstacle. As it is the boundary line between Meade County and Pennington County and the Seventh and Eighth Judicial Circuits, it resulted in the valuation of each county realty by different county assessors, county boards of equalization, administrative law judges and circuit court judges.

*Softball Ass'n,* 514 N.W.2d 693, 695 (S.D. 1994).

## ANALYSIS AND DECISION

[¶ 7] All real property in South Dakota is to be assessed for tax purposes at its true and full value. SDCL 10–6–33. The assessor's valuation is presumed to be correct, and the taxpayer bears the burden to overcome this presumption. *Roseland v. Faulk County Bd. of Equalization,* 474 N.W.2d 273, 275 (S.D.1991); *Mortenson v. Stanley County,* 303 N.W.2d 107, 110 (S.D. 1981). *See also Lincoln Twp.,* 1996 SD 13, ¶ 5, 543 N.W.2d at 257. Apart from the statutes governing assessment of property for taxation purposes, the following constitutional provisions must be complied with:

> (1) the burden of taxation of all property is to be equitable, S.D. Const. art. XI, § 2, (2) agricultural and nonagricultural property may be separated into distinct classes for tax purposes, S.D. Const. art. VIII, § 15, (3) valuation of property is not to exceed its actual value, S.D. Const. art. XI, § 2, and (4) taxation is to be uniform on all property in the same class. S.D. Const. art. VIII, § 15; S.D. Const. art. XI, § 2.

*Codington County Bd. of Comm'rs v. Bd. of Equalization,* 433 N.W.2d 555, 557 (S.D. 1988).

[¶ 8] Agricultural land is assessed pursuant to SDCL 10–6–33.1 which provides:

> The true and full value in money of agricultural land, as defined by § 10–6–31, which has been in primarily agricultural use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be the market value as determined for each county through the use of all comparable sales of agricultural land based on consideration of the following factors:
>
> (1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2; and
>
> (2) The soil, terrain and topographical condition of the property including but not limited to capability, the land's use, climate, accessibility and surface obstructions which can be documented through an analysis of land selling prices;
>
> The comparable sales that are used shall be evidenced by an instrument recorded with the register of deeds of the county in which the land is located, if the date of such instrument and the recording date is not more than two years prior to the assessment year.

The ALJ reviewing the Meade County appeal found the soil survey used by the Director in valuing Ranch's soil considered the factors listed in the statute. The Pennington County valuation was also calculated using the soil survey classification. *See Mortenson,* 303 N.W.2d at 112.

### [¶ 9] A. MEADE COUNTY ASSESSMENT

[¶ 10] Ranch appeals from the Meade County assessment raising two issues: 1) whether it was error to assess the property separately by county rather than as a whole unit; and 2) whether the statutes governing assessment of the property are constitutional.

### [¶ 11] I. Whether Ranch's entire tract of land, overlapping two counties, must be assessed as a whole?

[¶ 12] Ranch argues the entire 30,000 acre tract of property must be assessed as one unit. However, Ranch admits in its brief to this Court that "the present agricultural valuation statutes neither require such consideration nor, perhaps, even permit it.... Appellant is unable to locate either statutes or cases upon the point...." Our search also fails to yield any law which supports Ranch's contention that its property should be valued as one unit rather than separately by each county in which it lies. SDCL 10–3–16 supports the separate assessment by county as it provides, in relevant part, that "[e]ach county in this state is an assessment district."

[¶ 13] Ranch offers two cases to support its argument: *Wiggins v. Shewmake,* 374 N.W.2d 111 (S.D.1985), and *Brockel v. Lewton,* 319 N.W.2d 173 (S.D.1982). Both involve the remedy of specific performance of a

real estate sale. Ranch cites these cases to illustrate that real property is recognized in American law as having unique characteristics. However, neither case supports Ranch's claim that the acres overlapping two counties should be valued as one unit. Failure to cite supporting authority is a violation of SDCL 15–26A–60(6) and therefore, this issue is deemed waived. *Cooper v. Hauschild,* 527 N.W.2d 908, 912 (S.D.1995); *Kostel Funeral Home, Inc. v. Duke Tufty Co.,* 393 N.W.2d 449, 452 (S.D.1986).

[¶ 14] **II. Whether SDCL 10–6–33.1, 10–6–33.2, and 10–6–33.7 are unconstitutional?**

[¶ 15] Ranch next argues the statutes governing valuation of its property are an unconstitutional violation of Art. XI, § 2 of the South Dakota Constitution's requirement that "[t]axes shall be uniform on all property of the same class" and that "the valuation of property for taxation purposes shall never exceed the actual value thereof."

> Any legislative act is accorded a presumption in favor of constitutionality and that presumption is not overcome until the unconstitutionality of the act is clearly and unmistakably shown and there is no reasonable doubt that it violates fundamental constitutional principles.

*Accounts Management, Inc. v. Williams,* 484 N.W.2d 297, 299 (S.D.1992). Since Ranch challenges the constitutionality of these statutes, Ranch bears the burden of proving they violate a state constitutional provision. We find no evidence Ranch provided notice of this constitutional challenge to the Attorney General as required by SDCL 15–6–24(c); *Hofer v. Bd. of County Comm'rs,* 334 N.W.2d 507, 508–09 (S.D.1983). Ordinarily, we will not rule on the constitutionality of a statute unless the Attorney General has been notified because when an adjudication of unconstitutionality may seriously affect the general public, it is proper for the Attorney General to appear on behalf of the Legislature and the people. *Sharp v. Sharp,* 422 N.W.2d 443, 446 (S.D.1988); *Sioux Falls Argus Leader v. Young,* 455 N.W.2d 864, 870 (S.D.1990).

[¶ 16] We affirm the circuit court's decision in West Two Rivers Ranch v. Meade County, South Dakota.

[¶ 17] **B. PENNINGTON COUNTY ASSESSMENT**

[¶ 18] Ranch appeals from the Pennington County assessment raising four issues. We note at the outset that Ranch's issues numbered III and IV in its brief to this Court regarding the Pennington County assessment are identical to the two issues raised regarding the Meade County assessment. These two issues were discussed and resolved above, and the holdings apply to the appeal from the Pennington County assessment as well. Ranch's remaining two issues are: 1) whether the valuation method was proper when it assessed Ranch as cropland rather than rangeland; and 2) whether the valuation method was proper when it excluded consideration of location and accessibility.

[¶ 19] **I. Whether assessor's method of valuation was proper when it assessed Ranch as cropland rather than rangeland?**

[¶ 20] As stated above, the assessor's valuation is presumed correct. *Roseland,* 474 N.W.2d at 275; *Codington County,* 433 N.W.2d at 559. "Even if the director of equalization fails to fully comply with statutory mandates, rendering the assessment void, a taxpayer cannot avail himself of such invalidity without also showing that the tax levied was unjust and inequitable." *Knodel v. Bd. of County Comm'rs,* 269 N.W.2d 386, 389 (S.D.1978). "Substantial compliance with legislative directives is sufficient in determining assessed valuation." *Id.*

[¶ 21] Ranch claims this property should be valued as rangeland as opposed to cropland because of its inaccessibility and the untillable quality of the land. Ranch argues the land's income-producing capability must be considered when valuing it. We have stated " 'a landowner should not be able to determine the valuation of property by using it as rangeland when it could be used as cropland.' " *Lincoln Twp.,* 1996 SD 13, ¶ 16, 543 N.W.2d at 258 (quoting *Mortenson,* 303 N.W.2d at 111). However, here, Ranch's inaccessibility determines the property cannot be used as cropland. Ranch presented evidence showing the Pennington County

property is bordered by the Cheyenne River to the north and rimrock ledges on the east, west and south sides and cannot be accessed by farming equipment.

[¶ 22] Pennington County assessor, David Potts, acknowledged at the administrative hearing that only seven percent of Ranch's approximately 2,500 acres was tillable, but that even this land would not be feasible to grow crops due to its inaccessibility. Potts testified that getting farming equipment onto the property was an impossibility due to its being bordered by river and high ridges. County testified an adjustment from cropland to rangeland on this seven percent would reduce the valuation of Ranch from $85.00 per acre to $83.00 per acre. The ALJ made the adjustment complained of by Ranch here and reduced the assessment by $2.00 per acre or $4,988 total reduction. The ALJ can make an independent assessment of valuation as appeals to the Office of Administrative Hearings are heard de novo. SDCL 10–11–42.1. The ALJ concluded the true and full value of the approximately 2,500 total acres was $207,812.00.

[¶ 23] **II. Whether assessor's method of valuation was proper when it excluded consideration of location and accessibility?**

[¶ 24] As stated above, the property in question is bordered by the Cheyenne River to the north and by rimrock ledges on the east, west, and south sides. The owner of Ranch states his property in Pennington County is only accessible by horseback through his property located in Meade County by fording the Cheyenne River or with permission of adjoining landowners to the south or east with access being only by horse or on foot. In its Findings of Fact, the ALJ noted the property's limited accessibility and stated "a large portion of [it] can only be traversed on foot or on horseback." Ranch claims the assessor made no attempt to consider the marketability of such landlocked property and that the circuit court's refusal to consider this factor as an element of the property's valuation was clearly erroneous.

[¶ 25] At the administrative hearing, Potts testified regarding his determination of the effect of location and accessibility of Ranch based on comparable sales. Potts indicated that he reviewed a five-year history of sales and found only six out of one hundred sales where the property was located between one and six miles from any county road, such as Ranch's.[2] Potts testified he could not determine, from his examination of the comparable sales, that Ranch's location had a depreciable effect on the market value of the property.

[¶ 26] However, as regards Ranch's inaccessibility, Potts appeared to acknowledge that Ranch was uniquely situated.

Q (from County): And can you take off the accessibility if you can not document that it has affected other comparable sales?

A: Only if—the only way I can make an adjustment on the comparable sales data is *if I have enough sales to prove that there are adjustments.*

(emphasis added). No further testimony was taken following the above exchange. It is clear from the above testimony there were not sufficient sales in Pennington County which were comparable with the subject property as regards accessibility. Consequently, no adjustment was made in valuation that considers the Ranch's landlocked situs. While inaccessibility is but one factor to be considered under SDCL 10–6–33.1, it is this factor which significantly affects use of the property and its capacity to produce, as has been recognized by Potts when he testified it was impossible to get farming equipment down into the Ranch land.

[¶ 27] SDCL 10–6–33.1 provides the true and full value of agricultural land "shall be the market value as determined ... through

2. As will be developed herein, the unique nature of the land, which is only marginally suitable for pasture, makes it inappropriate to attempt to compare it with other sales which were within one to six miles from a county road. The fact that Ranch's land was within such distance of a road is irrelevant because of its terrain which precludes any access to that road. Thus, the fact that there is a road within a reasonable distance becomes meaningless due to the topography of Ranch and the fact other sales had a similar distance to a road does not make them "comparable."

the use of all comparable sales of agricultural land...." We have stated that while "exact uniformity and mathematical accuracy are absolutely impossible, there must be substantial compliance with the legislative directives on valuation of agricultural property." *Codington County Bd. of Comm'rs,* 433 N.W.2d at 559 (citations omitted); *see also Mortenson,* 303 N.W.2d at 112. Here, the Pennington County assessor was unable to substantially comply with the statute, by his own testimony, due to a lack of comparable sales information. The presumption that the county director of equalization's valuation is correct is thereby voided. *Kindsfater v. Butte County,* 458 N.W.2d 347, 351 (S.D.1990) (county assessor's assessment loses its presumption of validity when he/she fails to follow the statutory commands). As a matter of law, the County failed to properly assess Ranch's Pennington County property.

[¶ 28] Ranch finds itself uniquely situated, both in fact and in the law. Due to its topographical features, the portion of the property which lies in Pennington County is almost completely inaccessible. Because of this uncommon feature, the Pennington County assessor was unable to find similar properties in the county with which to compare land sales data. Ranch should not be penalized and made to support a higher tax valuation because there are no other properties similarly situated with which to make a comparison. Pennington County assessor is required to find sufficient number of sales to make the comparison mandated by SDCL 10-6-33.1. SDCL 10-6-64 permits a county director of equalization to look to other counties for this information or to look further back in years of sales within its own county.[3] We believe the Pennington County assessor's stopping his search where he did, after finding he did not have enough sales to make a comparison, did not go far enough and resulted in an unjust assessment of the property.

[¶ 29] "Uniformity and equality of taxation is preferred over the standard of full and true value when both cannot be secured." *Kindsfater,* 458 N.W.2d at 350 (citing *Codington County,* 433 N.W.2d at 559 and *Baken Park v. Pennington County,* 79 S.D. 156, 160, 109 N.W.2d 898, 900 (1961)). "In an appeal to the circuit court, the court does not merely have power to determine whether an assessment is excessive or arbitrary, but exercises independent judicial judgment to determine valuation." *Id.*; *Lincoln Twp.,* 1996 SD 13, ¶ 24, 543 N.W.2d at 259; *Knodel,* 269 N.W.2d at 389. We reverse and remand the Pennington County action to the circuit court for further proceedings consistent with this opinion.

MILLER, C.J., and SABERS, AMUNDSON, and KONENKAMP, JJ., concur.

3. This statute provides:

For the purpose of valuing agricultural land, if there are less than fifteen sales of agricultural land within a county, the director of equalization shall use sales of agricultural land within the county from previous years or sales of comparable agricultural land within adjoining counties. No sale of agricultural land from previous years or adjoining counties may be used if such sale would have been classified pursuant to § 10-6-58 had § 10-6-58 been in effect when such sale occurred.