[¶ 2.] Justice JUDITH K. MEIERHENRY
delivers the opinion of
the Court on Issue 1, which holds that the circuit court had jurisdiction to consider this action.
[¶ 3.] Justice JUDITH K. MEIERHENRY delivers the opinion of the Court on Issue 2, which holds that Landowners have standing to challenge the statute at issue.
[¶ 4.] Chief Justice DAVID GILBERTSON delivers the opinion of the Court on Issue 3, which holds that the challenged statute does not constitute a compensable taking under the United States Constitution or the South Dakota Constitution.
[¶ 5.] MEIERHENRY, Justice, writing for the Court on Issues 1 and 2.
[¶ 6.] Landowners, Robert and Judith Benson and Jeff and Patricia Messmer (hereinafter Landowners), brought this action seeking declaratory and injunctive relief against the State of South Dakota, a state agency, and certain state officials. Landowners challenge the constitutionality of SDCL 41-9-1.1(2), which addresses the shooting of small game from a public right-of-way. The circuit court found that SDCL 41-9-1.1(2) constitutes a taking of private property without just compensation in violation of the United States and South Dakota Constitutions. On appeal, the State contests that decision. The State also asserts that the circuit court lacked jurisdiction to grant a declaratory judgment and that Landowners lacked standing to challenge SDCL 41-9-1.1(2). Through separate opinions, we hold that the circuit court had jurisdiction to grant a declaratory judgment and that Landowners had standing, however we hold that SDCL 41-9-1.1(2) is not a taking within the meaning of the Fifth Amendment of the United States Constitution and article VI, section 13 of the South Dakota Constitution. Affirmed in part and reversed in part.
*138 FACTUAL AND PROCEDURAL BACKGROUND
[¶ 7.] The Bensons reside on and operate a ranch in Tripp County, South Dakota. The ranch operates primarily for agricultural purposes, which include the raising of livestock and a variety of crops. The Messmers reside on and operate a farm in Jerauld County, South Dakota. The Messmer farm is a cattle and grain operation. Both the Bensons and the Messmers also operate private hunting lodges and maintain private hunting preserves on their properties. The Benson ranch includes a parcel cultivated exclusively for pheasant habitat.
[¶ 8.] South Dakota law requires hunters to obtain the permission of property owners before hunting on private property. SDCL 41-9-1. The permission requirement, however, does not apply to highways or other public rights-of-way except for certain safety zones, that is, within six hundred sixty feet of an occupied dwelling, a church, a schoolhouse, or livestock. SDCL 41-9-1.1. In 2003, the South Dakota Legislature amended SDCL 41-9-1.1 by adding the following language:
For purposes of this section, hunting on highways or other public rights-of-way includes:
(1) The shooting at or taking by legal methods of small game, except mourning dove, that are located within the boundaries of the highway or public right-of-way;
(2) The shooting at or taking by legal methods of small game, except mourning dove, that are in flight over private land if the small game has either originated from or has taken flight from the highway or public right-of-way or if the small game is in the process of flying over the highway or public right-of-way.
If subdivision (2) of this section is declared by an advisory opinion or adjudication of the South Dakota Supreme Court to be a taking of private property requiring compensation, subdivision (2) is void.
SDCL 41-9-1.1.
[¶ 9.] Landowners contend that subsection two results in a taking of their property without just compensation in violation of article VI, section 13 of the South Dakota Constitution and the Fifth Amendment of the United States Constitution. They assert that SDCL 41-9-1.1(2) prevents them “from excluding members of the public from shooting onto their ranch or farmland while hunting in the public rights-of-way that border [their] properties.” Several miles of public rights-of-way in the form of county and township roads bordering Landowners’ properties are used by the public for road hunting. The roads that border the Bensons’ pheasant preserve are particularly attractive to road hunters.
[¶ 10.] Landowners brought suit against the State of South Dakota and the South Dakota Department of Game, Fish, and Parks (GFP), as well as Governor M. Michael Rounds, Attorney General Larry Long, and GFP Secretary John Cooper in their official'capacities (collectively State). In addition to claiming that SDCL 41-9-1.1(2) constitutes an unconstitutional taking, Landowners asserted that the state officials violated 42 USC § 1983 by depriving them of their constitutional rights under color of law. Landowners asked the circuit court to declare that SDCL 41-9-1.1(2) results in an unconstitutional taking of private property without just compensation. Landowners also sought injunctive relief preventing the State’s enforcement of SDCL 41-9-1.1(2).
[¶ 11.] Because the case presented no genuine issues of material fact, Landown *139 ers and the State filed cross motions for summary judgment. The circuit court granted summary judgment in favor of Landowners. On appeal, the State raises the following issues:
ISSUES
1. Whether the circuit court had jurisdiction to grant a declaratory judgment against the State or officials of the State acting in their official capacities.
2. Whether Landowners lack standing to challenge criminal prohibitions under which they are not threatened.
3. Whether the circuit court erred when it held that SDCL 41-9-1.1(2) constitutes a taking of Landowners’ property within the meaning of the Takings Clause of the Fifth Amendment of the United States Constitution and article VI, section 13 of the South Dakota Constitution.
DECISION
[¶ 12.] 1. Whether the circuit court had jurisdiction to grant a declaratory judgment against the State or officials of the State acting in their official capacities.
[¶ 13.] The State asserts that the circuit court lacked jurisdiction to hear Landowners’ declaratory judgment action against the State. Whether the circuit court had jurisdiction is a question of law to be reviewed de novo. Dakota Systems, Inc. v. Viken, 2005 SD 27, ¶ 7, 694 N.W.2d 23, 27. The State first asserts that the doctrine of sovereign immunity bars this suit. The State admits that under the Ex parte Young doctrine, the Court may hear an action alleging that state officials are acting unconstitutionally. See 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The State,, however, maintains that the state officials are taking no action and that they are merely “refusing to implement a criminal prohibition that no longer exists.” The State argues that sovereign immunity bars a declaratory judgment action against the State or its officials. Further, even if such an action may be brought, the State argues it does not present a justiciable controversy.
[¶ 14.] In light of settled precedent, we find no merit to the State’s argument. We have recognized that the right to just compensation “is a right of the strongest character” and is “a self-executing constitutional provision.” SDDS, Inc. v. State, 2002 SD 90, ¶22, 650 N.W.2d 1, 9. As such, “the remedy does not depend on statutory facilitation.” Id. Therefore, common law actions may be brought against the State and its officers even though no express consent has been given. See Darnall v. State, 79 S.D. 59, 108 N.W.2d 201 (1961) (allowing an action under article VI, section 13 of the South Dakota Constitution against the state, the governor, and members of the state highway commission). As we stated in Damall,
Where a state or an agency thereof acting in a sovereign capacity takes or damages private property for public use without exercising the power of eminent domain, it cannot evade the constitutional provision which guarantees the right to compensation but will be obligated to pay the same as if it had proceeded under that power. The constitution should bind officers and agents of the state and the state should not by indirect action be permitted to violate it. It expects and demands compliance by its citizens and they have the correlative right to expect that from the state.
79 S.D. at 65-66, 108 N.W.2d at 204 (citations omitted).
*140 [¶ 15.] Additionally, we ' recognized in SDDS, Inc., that “South Dakota’s sovereign, immunity is not a bar to [a] Fifth Amendment takings claim.” 2002 SD 90, ¶ 20, 650 N.W.2d at 8-9. “ ‘[T]he constitutional privilege of a state to assert its sovereign immunity in its own courts does not confer upon a state a concomitant right to disregard the [United States] Constitution,’ ” and “ ‘[t]he states and their officers are bound by obligations imposed by the Constitution.’ ” Id. (quoting Alden v. Maine, 527 U.S. 706, 754, 119 S.Ct. 2240, 2266, 144 L.Ed.2d 636 (1999)). We have also recognized that a declaratory judgment action ,is a proper method of bringing a constitutional question before the court. Dan Nelson, Auto., Inc. v. Viken, 2005 SD 109, ¶30, 706 N.W.2d 239, 251 (finding “rather novel” the notion that “states are generally immune from suits for declaratory relief’); Dakota Systems, Inc., 2005 SD 27, ¶ 9, 694 N.W.2d at 28 (finding that sovereign immunity does not bar a declaratory judgment action against a state official); see also Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; White Eagle Oil & Refining Co. v. Gunderson, 48 S.D. 608, 205 N.W. 614 (1925) (applying the Ex parte Young doctrine).
[¶ 16.] Finally, we reject the State’s claim that no justiciable controversy has been presented. Under the Declaratory Judgments Act, any person whose rights are affected by a statute may obtain a declaration of rights. SDCL 21-24-3. We have said that in order for a court to have jurisdiction over a declaratory judgment action, there must be “ ‘a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it.’ ” Danforth v. City of Yankton, 71 S.D. 406, 412, 25 N.W.2d 50, 53 (1946) (citation omitted). Landowners, as property owners, have a claim of right to their property. Thus, their allegation that the State’s actions result in an unconstitutional taking is sufficient to present a justiciable controversy. Landowners have properly challenged the constitutionality of SDCL 41-9-1.1(2) by proceeding against the State and its officials in this declaratory action.
[¶ 17.] GILBERTSON, Chief Justice, KONENKAMP, ZINTER, Justices, and JOHNSON, Circuit Judge, concur.
[¶ 18.] %. Whether Landoumers lack standing to challenge criminal prohibitions under which they are not threatened.
[¶ 19.] The State claims that Landowners lack standing to challenge the constitutionality ■ of SDCL 41-9-1.1(2). “The question of. whether a party has standing to maintain an action is a question of law reviewable by this Court de novo.” Fritzmeier v. Krause Gentle Corp., 2003 SD 112, ¶ 10, 669 N.W.2d 699, 702. According to the State, Landowners lack standing for three reasons. First, Landowners have not been threatened with prosecution under SDCL 41-9-1.1(2), and they “have no standing to challenge a failure to prosecute someone else.” Second, Landowners “lack authority to demand that certain acts remain criminal after the Legislature has repealed their prohibition.” Third, the circuit court “lacks the authority to adopt a criminal, prohibition where it has been repealed by the [Legislature.”
[¶ 20.] In response, Landowners argue that the State mischaracterizes their claims. They “neither ‘challenge a criminal prohibition under which .they are not threatened’■ nor ‘judicially assert that certain activity must be [made] criminal.’ ” We agree with Landowners. Landowners do not assert that SDCL 41-9-1.1(2) accomplishes a taking of their property by *141 decriminalizing an act. In their complaint, Landowners allege that:
44. Section 41-9-1.1(2) denies [Landowners] the right to prevent others from shooting onto their property. Section 41-9-1.1(2) denies [Landowners] the right to exclude others from recreating on their property, as well as the right to prevent the projection and disposition of objects onto their property.
45. Section 41-9-1.1(2) denies [Landowners] valuable hunting and fishing rights appurtenant to and separable from their property as provided by [SDCL] 43-13-1.
46. Section 41-9-1.1(2) subjects [Landowners] and their families, employees, and guests to fear and risk of serious bodily injury or death and subjects [Landowners]’ homes, structures, livestock, equipment, crops and land to injury and/or damage.
47. Section 41-9-1.1(2) impairs [Landowners]’ full enjoyment and use of their property.
Thus, Landowners consistently argue that the statute subjects them to intrusions of their property. Landowners do not refer to “decriminalization,” nor do they demand prosecution. Rather, the State asserts the decriminalization argument.
[¶ 21.] The State cannot change the nature of the claim in order to oust a court of jurisdiction. See Elliott v. Bd. of County Comm’rs, 2005 SD 92, ¶¶ 16-17, 703 N.W.2d 361, 368 (stating that “jurisdiction depends on the pleadings and the prayer for relief’ and “ ‘[t]he test for determining jurisdiction is ordinarily the nature of the case, as made by the complaint, and the relief sought’ ”). Here, Landowners seek relief in the form of a declaratory judgment to establish whether SDCL 41-9-1.1(2) is a taking. This request comports with the purpose of the Declaratory Judgments Act, which “is to ‘declare rights, status, and other legal relations.’ ” Kneip v. Herseth, 87 S.D. 642, 647, 214 N.W.2d 93, 96 (1974) (citing SDCL 21-24-1). Further, Landowners’ claim falls squarely within the philosophy of the Declaratory Judgments Act. Id. at 647-48, 214 N.W.2d 93. As we said in Kneip v. Herseth,
The philosophy of the Declaratory Judgment Act establishes that through it the courts seek to enable parties to authoritatively settle their rights in advance of any invasion thereof. Within the bounds of the remedial act’s command of a liberal construction and liberal administration is found its ultimate goal of allowing “the courts (to be) more serviceable to the people.” The achievement of peace through the avoidance of predictable conflict permeates as the Act’s main function.
Id. at 648, 214 N.W.2d 93 (citations omitted).
[¶22.] Standing to bring an action depends on an allegation by the litigant “ ‘that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.’ ” Parsons v. South Dakota Lottery Comm’n, 504 N.W.2d 593, 595 (S.D.1993) (quoting Gladstone, Realtors, et al. v. Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)). The United States Supreme Court has stated that, in order to establish standing, a litigant must show: (1) an injury in fact suffered by the plaintiff, (2) a causal connection between the plaintiffs injury and the conduct of which the plaintiff complains, and (3) the likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).
*142 [¶ 23.] • In this case, Landowners allege that SDCL 41-9-1.1(2) allows the invasion of their property. Such alleged invasion constitutes an actual or threatened injury to Landowners’ legally protectible interest in their land. Further, their claimed injury is fairly traceable to SDCL 41-9-1.1(2). Finally, a finding that the alleged invasion is a governmental taking without compensation renders the statutory provision void. See SDCL 41-9-1.1. Thus, under the principles set forth by both this Court and the United States Supreme Court, Landowners have established standing to assert a claim that SDCL. 41-9-1.1(2) constitutes a taking.[1]
[¶ 24.] GILBERTSON, Chief Justice, KONENKAMP, Justice, and JOHNSON, Circuit Judge, concur.
[¶ 25.] ZINTER, Justice, concurs specially.
[¶ 26.] JOHNSON, Circuit Court Judge, sitting for SABERS, Justice, disqualified.

. Despite the fact that both standing jurisprudence and the Declaratory Judgments Act allow Landowners to challenge SDCL 41-9-1.1(2), the State argues that under our decision in Reis v. Miller, Landowners lack standing to challenge the ''decriminalization” of an act. 1996 SD 75, 550 N.W.2d 78. The State’s reliance on Reis is misplaced. In Reis, the issue presented was not an unconstitutional taking of private property. Id. ¶¶ 7-9. Rather, the issue was the extent of the easement included in public rights-of-way. Id. Further, in Reis we declined to analyze the issue of standing as to an equal protection claim. Id. ¶ 24. We did, however, recognize that the landowner had standing, to bring a declaratory judgment action, and we proceeded to review the case on that basis. Id. ¶ 24.