SEVERSON, Justice
(dissenting).
[¶ 42.] Because the facts of this case do not constitute “exigent circumstances” as that phrase is used in SDCL 40-1-5, I respectfully dissent. The trial court’s order ratifying the impoundment of Ms. Edwards’s fifteen cats was error, and Ms. Edwards’s cats should be returned to her care. Furthermore, the requirements of SDCL 40-1-5 were not met initially, and the State cannot require Ms. Edwards to pay the costs of her cats’ care as a condition of their return to her.
[¶43.] This case involves a matter of statutory interpretation. Our rules of statutory interpretation are well settled. “The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained primarily from the language expressed in the statute.” In re Guardianship of S.M.N., T.D.N., and T.L.N., 2010 SD 31, ¶ 9, 781 N.W.2d 213, 217-18 (quoting In re Guardianship and Conservatorship for T.H.M. and 2002 SD 13, ¶ 7, 640 N.W.2d 68, 71 (quoting Martinmaas v. Engelmann, 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611)) (additional citation omitted). “The intent of a statute is determined from what the Legislature said, rather than what [this Court] thinks it should have said, and [this Court] must confine itself to the language used.” Id. (citations omitted). “Words and phrases in a statute must be given their plain meaning and effect.” Id. (citations omitted). “When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court’s only function is to declare the meaning of the statute as clearly expressed.” Id. (citations omitted).
*285 [¶ 44.] SDCL 40-1-5 provides the procedure for the impoundment of an animal:
Any peace officer, agent of the board, or agent or officer of any humane society finding an animal inhumanely treated, as defined in § 40-1-2.4, shall, pursuant to a warrant or court order, cause the animal to be impounded or otherwise properly cared for, and the expenses of such impoundment or care shall be a lien on the animal to be paid before the animal may be lawfully recovered. However, a warrant or court order is not necessary if the animal is severely injured, severely diseased, or suffering and any delay in impounding the animal would continue to cause the animal extreme suffering or if other exigent circumstances exist. If any animal is impounded or subjected to other action under this section without a warrant or court order, the officer or agent shall subsequently show cause for the impoundment or other action to the court, and the court shall issue an order ratifying the impoundment or action; or, if sufficient cause for the im-poundment or action is not shown, the court shall order the return of the animal to the owner or other appropriate remedy.
SDCL 40-1-2.4, in turn, defines the inhumane treatment of an animal:
[T]he inhumane treatment of an animal is any act of mistreatment, torture, cruelty, neglect, abandonment, mutilation, or inhumane slaughter of an animal that is not consistent with generally accepted training, use and husbandry procedures for the species, breed, physical condition, and type of animal.
Furthermore, SDCL 40-1-2.3 defines neglect:
[T]he neglect of an animal is the failure to provide food, water, protection from the elements, adequate sanitation, adequate facilities, or care generally considered to be standard and accepted for an animal’s health and well-being consistent with the species, breed, physical condition, and type of animal.
Finally, SDCL 40-1-2.2 defines mistreatment, torture, and cruelty of animals:
[T]he mistreatment, torture, or cruelty of an animal is any act or omission whereby unnecessary, unjustifiable, or unreasonable physical pain or suffering is caused, permitted, or allowed to continue including acts of mutilation.
[¶ 45.] A review of SDCL 40-1-5 and its accompanying definitions reveals that impoundment is appropriate in dire cases of animal abuse or in certain emergency situations. Under SDCL 40-1-5, an officer may, pursuant to a warrant or court order, impound an inhumanely treated animal. SDCL 40-1-5 also affords officers the authority to impound an animal without a warrant or court order if an animal is severely injured, severely diseased, or in extreme suffering. An officer is thus able to act quickly to protect the well-being of an animal in certain enumerated emergency situations. However, because not every emergency situation requiring immediate impoundment could be contemplated by the statute, SDCL 40-1-5 provides that a warrant or court order is not necessary for impoundment where “exigent circumstances” exist.
[¶ 46.] The State argues that Officer Jandt properly seized Ms. Edwards’s cats without a warrant or court order on the basis that “exigent circumstances” existed. Because the phrase “exigent circumstances” is ambiguous, we resort to canons of statutory construction to ascertain its meaning. See S.M.N., 2010 SD 31, ¶ 9, 781 N.W.2d at 218 (citations omitted). “Under the canon of statutory construction known as ejusdem generis, ‘where general words follow the enumeration of particular classes of things, the general words will be *286 construed as applying only to things of the same general class as those enumerated.’ ”[6] Argus Leader v. Hagen, 2007 SD 96, ¶ 18, 739 N.W.2d 475, 481 (quoting Nielson v. AT & T Corp., 1999 SD 99, ¶ 15, 597 N.W.2d 434, 439 (quoting Wendell v. S.D. Dep’t of Transp., 1998 SD 130, ¶ 7, 587 N.W.2d 595, 597)) (additional citation omitted). See Goetz, 2001 SD 138, ¶ 24, 636 N.W.2d at 682 (citing Sioux Falls Sch. Dist. v. Koupal, 526 N.W.2d 248, 252 (S.D.1994); State v. Galati, 365 N.W.2d 575, 577 (1985)) (additional citation omitted). The meaning of the phrase “exigent circumstances” must be discerned considering the context in which it is used.
[¶ 47.] The general phrase “exigent circumstances” in SDCL 40-1-5 follows an enumeration of a particular class of things. The particular class of things enumerated is emergency situations where impoundment is necessary to protect the well-being of an animal. According to the canon of ejusdem generis, the general phrase “exigent circumstances” cannot take a meaning beyond this particular class. See Argus Leader, 2007 SD 96, ¶ 18, 739 N.W.2d at 481 (citations omitted). Therefore, the term “exigent circumstances” must be read to refer to emergency situations where impoundment without a warrant or court order is necessary to protect the well-being of an animal. See id. See also supra ¶ 15 (citing Blackwell, 2001 SD 127, ¶ 16 n.2, 635 N.W.2d at 586 n.2 (“We recognize that there may be times when an emergency exists, or when immediate action is necessary to protect the health, welfare, and safety of the citizens. Under such circumstances, subsequent judicial consideration may become impracticable.”)).
[¶ 48.] “[T]he construction of a statute and its application to the case at hand presents a question of law” that we review de novo. Tschetter v. Berven, 2001 SD 11, ¶ 6, 621 N.W.2d 372, 375 (quoting Shevling v. Butte Cty. Bd. of Comm’rs, 1999 SD 88, ¶ 12, 596 N.W.2d 728, 730). The trial court’s factual findings are reviewed under the clearly erroneous standard. Babcock, 2006 SD 59, ¶ 12, 718 N.W.2d at 628 (citation omitted). Once the facts have been determined, however, whether those facts constitute “exigent circumstances” is reviewed de novo. See id. See also S.M.N., 2010 SD 31, ¶ 11, 781 N.W.2d at 218 (citation omitted).
[¶ 49.] The State argues that “exigent circumstances” existed because Ms. Edwards’s fifteen cats were not confined to kennels and obstructed her view while driving.[7] The State cites SDCL 32-26^43,[8] *287 which relates to the maximum number of passengers in a vehicle and provides that a vehicle may not be loaded so as to obstruct the view of the driver. The State provides no authority for the notion that animals traveling in a vehicle must be confined to kennels. It strains credibility to conclude that the facts of this ease constitute the type of emergency situation requiring an officer to act quickly to impound animals without a warrant or court order in order to protect the animals.
[¶ 50.] The State also suggests that im-poundment was necessary due to Ms. Edwards’s inhumane treatment and neglect of her cats. SDCL 40-1-5 provides, however, that an officer who finds an inhumanely treated animal must obtain a warrant or court order prior to impoundment. Had Officer Jandt believed that Ms. Edwards’s cats were inhumanely treated, SDCL 40-1-5 required that he obtain a warrant or court order. If inhumane treatment rather than “exigent circumstances” was the basis of the impoundment, it was done in violation of SDCL 40-1-5 because Officer Jandt did not obtain a warrant or court order prior to impoundment.
[¶ 51.] Nevertheless, the State argues that Ms. Edwards’s cats were inhumanely treated and neglected because she failed to provide an adequate “facility for them to live and play.” See SDCL 40-1-2.3, 2.4. The State contends that “[t]he cats had little or no room to move around, to exercise, or to play.... This undoubtedly caused unnecessary suffering to the cats by being confined for such long periods of time in such a small space.” Yet, the State initially provided the cats no better facilities than Ms. Edwards. At the hearing on August 24, 2009, to allow the State to transfer ownership of the cats to the Humane Society, the trial court asked whether the cats were then living at the city pound. The State’s Attorney replied, “Yes. And we have to remove them today. They are — they have been in cages and have only been able to get out for short periods of time. That is not the condition we want them in. We do not want them to be there any longer.”
[¶ 52.] The question before this Court is not whether Ms. Edwards’s cats lived in ideal conditions or whether they may receive better care elsewhere. The question is whether “exigent circumstances” existed to allow Officer Jandt to seize the animals without a warrant or court order. That question must be answered in the negative. Ms. Edwards provided her cats with food, water, protection from the elements, adequate sanitation, and affection. Her cats had been spayed or neutered and had received their immunizations. Indeed, Dr. Joseph Engelhart, a veterinarian in Huron, South Dakota, examined Ms. Edwards’s cats one month prior to their seizure and found them in “good health” with “no evidence of neglect.” Despite the State’s avowed concerns regarding Ms. Edwards’s ability to operate her vehicle *288 amid her fifteen cats, the State did not cite her with a traffic violation. The claims of “exigent circumstances” and inhumane treatment are a pretext. If safe operation of the vehicle was the concern, the police should have addressed that issue and not exposed the taxpayers to the cost of caring for animals wrongfully seized from Ms. Edwards.
[¶ 53.] Ms. Edwards’s cats should be returned to her care. The requirements of SDCL 40-1-5 were not met initially, and the State cannot require Ms. Edwards to pay the costs of her cats’ care as a condition of their return to her. See SDCL 40-1-5 (“[T]he expenses of such impoundment or care shall be a lien on the animal to be paid before the animal may be lawfully recovered.”). Because I would reverse on this basis, it is not necessary to address the remainder of Ms. Edwards’s arguments on appeal.
[¶ 54.] MEIERHENRY, Justice, joins this dissent.

. The canon of ejusdem generis does not apply if the specifically enumerated class is exhaustive.
[W]here the specific words embrace all the persons or objects of the class designated by the enumeration, the general words take a meaning beyond the class. To apply the rule in this instance would render the general words meaningless for the reason that there is nothing of the same kind (ejusdem generis) to fall within their purview. Its application, consequently, would contravene the more important rule of construction that all words are to be given effect.... In order to prevent their rejection as sur-plusage, the general words take an unrestricted meaning on the ground that the [L]egislature, by the addition of general words to an exhaustive enumeration, must have intended that they have meaning outside the class.
Goetz v. State, 2001 SD 138, ¶ 24, 636 N.W.2d 675, 682-83 (quoting 2A Sutherland, Statutory Construction § 47:21 (6th ed. 2000)) (emphasis omitted). Here, SDCL 40-1-5 does not specifically enumerate every situation in which an officer may impound an animal without a warrant or court order. Contra id. The canon of ejusdem generis therefore restricts the meaning of the general term "exigent circumstances,” and the term does not take a meaning beyond the class.

. The majority cites State v. Dillon, 2007 SD 77, 738 N.W.2d 57, and others in support of *287 its contention that the need to protect or preserve life and avoid serious injury are valid considerations in determining the existence of "exigent circumstances." See supra ¶ 15. Those cases, however, are inapplicable as they define the parameters of the exigent circumstances exception to the warrant requirement under the Fourth Amendment. In the present case, the meaning of the phrase "exigent circumstances” should be ascertained with reference to SDCL 40-1-5. It should not be borrowed from Fourth Amendment analysis.

. SDCL 32-26-43 provides:
No person may drive a vehicle when it is so loaded, or when there are in the front seat such a number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle or as to interfere with the driver’s control over the driving mechanism of the vehicle.